**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC., et al., Plaintiffs,**

v.

**Donald J. DEVINE, Director, United States Office of Personnel Management, Defendant.**

**Civ. A. No. 83–0928.**

United States District Court, District of Columbia.

July 15, 1983.

Jack Greenberg, James M. Nabrit, III, Charles Stephen Ralston, Lowell Johnston, New York City, for NAACP Legal Defense, etc.

William L. Robinson, Norman Chachkin, Stuart J. Land, Boris Feldman, Arnold & Porter, Washington, D.C., for Lawyers Comm. for Civil Rights Under Law.

Robert R. Coulter, Washington, D.C., for Indian Law Resource Center.

Walter B. Slocombe, Caplin & Drysdale, Washington, D.C., for Natural Resources Defense Council, Inc.

Elaine R. Jones, Barry L. Goldstein, Brent Simmons, Washington, D.C., for NAACP Legal Defense, etc.

Robert L. Becker, New York City, for Puerto Rican Legal Defense and Education Fund, Inc.

M. Carolyn Cox, A. Stephen Hut, Douglas B. Jordan, Wilmer, Cutler & Pickering, Washington, D.C., for Sierra Club Legal Defense Fund, Inc.

John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

In this action, plaintiffs challenge their threatened exclusion from participation in the Combined Federal Campaign (CFC), an annual charitable fund-raising drive conducted by the federal government among its employees. The CFC is the only means by which charitable organizations may solicit contributions from federal employees or military personnel at their workplaces or duty stations. Plaintiffs are non-profit, tax-exempt charitable organizations within the meaning of section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). Each plaintiff engages in litigation and oth-

er activities with the purpose of protecting the environment advancing the civil rights of a particular group of minorities or women. They have been referred to generally as "legal defense funds." Defendant is the Director of the Office of Personnel Management (OPM), the agency under whose auspices the CFC is conducted. Plaintiffs essentially argue that a new Executive Order having the objective of denying legal defense funds the opportunity to participate in the CFC violates their asserted first amendment right to engage in charitable solicitation. As plaintiffs put it, the "basic issue" of this case is whether they, like other CFC participants, will be allowed to have their "30-word" informational statement included in the annual campaign brochure. This Court previously denied plaintiffs' motion for a preliminary injunction and defendant's motion to dismiss. This matter is now ripe for decision upon plaintiffs' motion for summary judgment which, along with their renewed request for a preliminary injunction, was argued on July 6, 1983. For the reasons which follow, the Court grants plaintiffs' motion for summary judgment in part and dismisses the action in part, the renewed request for preliminary injunctive relief being denied as moot.

The CFC was created by President Kennedy through Executive Order 10927, on March 18, 1961. Exec. Order No. 10,927, 3 C.F.R. 454 (1959–63 Compilation). How it operates is described in greater detail in *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F.Supp. 1365 (D.D.C.1981) [hereinafter referred to as *NAACP LDF I*] and *NAACP Legal Defense and Educational Fund, Inc. v. Devine*, 560 F.Supp. 667 (D.D.C.1983) [hereinafter referred to as *NAACP LDF II*]. At one time legal defense funds such as plaintiffs were excluded from participation in the CFC because of the "direct services" requirement. The direct services requirement limited participation in the CFC to charitable organizations "providing direct services to persons in the fields of health and welfare services." *NAACP LDF I*, 504 F.Supp. at 1366 (quoting *Manual on Fund-Raising*

*Within the Federal Service for Voluntary Health and Welfare Agencies* § 5.21).

Two of the plaintiffs in the instant action challenged that direct services requirement on, among other grounds, the ground that it abridged their first amendment right to engage in charitable solicitation. *NAACP LDF I,* 504 F.Supp. at 1366. Agreeing with the plaintiffs that the direct services requirement impinged upon the plaintiffs' first amendment rights, Judge Gesell struck down the requirement as "too vague to comport with the strict standards of specificity" required in the first amendment context. *Id.* at 1366–67. Thereafter, all of the plaintiffs in the instant action applied and were permitted to participate in the CFC for 1981 and/or 1982 as "national service agencies." Executive Order 10927 was superceded by Executive Order 12353 on March 23, 1982, 47 Fed.Reg. 12785 (1982); the new order did not affect plaintiffs' ability to participate in the CFC.

On February 10, 1983, however, Executive Order 12353 was amended by Executive Order 12404, which had the objective of reinstating the direct services requirement, but with the constitutionally-required specificity that the previous such requirement was found to lack in *NAACP LDF I.* It states that

> eligibility for participation in the Combined Federal Campaign shall be limited to voluntary, charitable, health and welfare agencies that provide or support direct health and welfare services to individuals or their families. Such direct health and welfare services must be available to Federal employees in the local campaign solicitation area, unless they are rendered to needy persons overseas. Such services must directly benefit human beings, whether children, youth, adults, the aged, the ill and infirm, or the mentally or physically handicapped. Such services must consist of care, research or education in the fields of human health or social adjustment and rehabilitation; relief of victims of natural disasters and other emergencies; or assistance to those who are impoverished and therefore in need of food, shelter, clothing, education, and basic human welfare services.

Exec.Order No. 12,404 § 1, 48 Fed.Reg. 6685 (1983). The Executive Order also provides that "Agencies that seek to influence the ... determination of public policy through ... advocacy, lobbying or litigation on behalf of parties other than themselves shall not be deemed charitable health and welfare agencies and shall not be eligible to participate in the Combined Federal Campaign." The announced purpose of the Executive Order's instruction that a direct services requirement be reimposed was to exclude legal defense funds from the CFC, identifying as such several of the plaintiffs in this action. Devine Memorandum of Feb. 2, 1983, *"New Executive Order for the Combined Federal Campaign,"* Exh. K to Ralston Affidavit.

According to defendant, the participation of some organizations in the past had resulted in controversy and threatened boycotts of the campaign. For example, various labor groups expressed their opposition to the including of the National Right to Work Legal Defense Foundation in the CFC and warned defendant of potential boycotts as a result. Chairpersons of some local CFC committees also advised defendant of their concerns that contributions to the CFC might decline because of the presence in the campaign of organizations involved in such issues as integration and abortion, as well as "right-to-work."

Plaintiffs argue that the reinstated direct services requirement suffers from the same vagueness defect as the rule at issue in *NAACP LDF I.* They also argue that because the CFC is a "limited public forum," the Executive Order's exclusion of organizations "that seek to influence ... the determination of public policy through ... advocacy, lobbying, or litigation on behalf of parties other than themselves" is an unconstitutional infringement upon their first amendment rights. Furthermore, they assert that the order violates their guarantee to equal protection of the laws. Defendant contends that the vagueness chal-

lenge is premature inasmuch as any such deficiency could be cured, in defendant's view, by the promulgation of implementing regulations containing the needed specificity. This argument has merit: proposed regulations to implement Executive Order 12404 were announced on June 24, 1983 for a 30-day notice and comment period. Yet the substantive first amendment issues raised by the Executive Order are ready for judicial review at this time, for the reason that no regulation could remove the allegedly unconstitutional exclusion and remain consistent with the Executive Order.

It is important to note that the CFC provides employees with two ways in which to make contributions, inasmuch as (for reasons which will be explained below) plaintiffs' first amendment rights differ with respect to these two methods. An employee may designate that his donations be distributed to particular organizations participating in the CFC. Alternatively, if the employee does not designate any agency to benefit from the donation, the amount contributed is placed into a pool which is divided among the approved agencies in accordance with a formula set forth in the regulations. *See NAACP LDF II,* 560 F.Supp. at 670.

### I. *Plaintiffs' First Amendment Rights*

■ The solicitation of charitable contributions involves interests protected by the first amendment's guarantee of freedom of speech. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 629, 100 S.Ct. 826, 832, 63 L.Ed.2d 73. At least with respect to designated funds, this principle applies to the CFC: by engaging in solicitation throughout the campaign, an organization seeks to persuade an employee to make a donation to that organization. *See NAACP LDF I,* 504 F.Supp. at 1637, *see also NAACP LDF II,* 560 F.Supp. at 675. Yet the same interests are not present in the making of undesignated contributions. An employee's decision to make a general undesignated donation is not motivated by the same considerations as a decision to designate a contribution. Such

a decision is not a response to a particular organization's solicitation activities in the same way that a decision to make a designated contribution is, for the reason that he yields to the CFC all control over how that money is to be disbursed.

This was the basis for this Court's decision in *NAACP LDF II* that denying plaintiffs the eligibility to receive undesignated funds did not violate their first amendment right to. engage in charitable solicitation. This Court found *NAACP LDF II* "quite a different case" from *NAACP LDF I,* noting that while the opportunity for the plaintiffs to receive designated contributions was ensured by the prior decision, "[b]y contrast, a donor making undesignated contributions elects to express no preference that his money should be distributed in part to plaintiffs; rather all he is saying is that his money should go to the public good." 560 F.Supp. at 675. Accordingly, with regard to undesignated funds, plaintiffs' claim appears to be more properly the subject of an equal protection analysis than first amendment scrutiny.

■ Where the government has created a forum for activities involving free speech, reasonable time, place, and manner restrictions are permissible, but any content-based prohibition must be "narrowly drawn to effectuate a compelling state interest." *Perry Education Association v. Perry Local Educators' Association,* — U.S. —, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983), *see also Police Department of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1977). Attempting to analogize the CFC to the school internal mail system found not to be a public forum by the Supreme Court in *Perry Education,* defendant argues that the CFC is not a public forum and that therefore plaintiffs have no right to participate in it, because access to the campaign is limited to certain types of groups.

■ It is clear that the CFC does constitute a public forum to the extent that it permits numerous charitable organizations to present their messages to federal employees. As Judge Gesell found, "by pro-

viding organizations the opportunity to participate in the CFC, the government has, in effect, provided a billboard or channel of communication through which organizations can disseminate their appeals to federal workers." *NAACP LDF I,* 504 F.Supp. at 1367. As defendant recently explained to the Subcommittee on Manpower and Housing of the House Committee on Governmental Operations, charitable appeals at federal facilities existed prior to the creation of the CFC through Executive Order 10927, but on an unregulated basis that caused disruption in the workplace and did not provide charitable organizations with an efficient, consistent means of soliciting contributions. Devine Statement to Subcommittee on Manpower and Housing at 2–3 (Mar. 24, 1983), Attachment C to Motion to Dismiss. Since charitable solicitation in the federal workplace predated the CFC, Executive Order 10927 did not open the door to such activities, but placed guidelines upon how those activities would be conducted. The CFC therefore became the exclusive forum for charitable solicitation in the federal workplace. Accordingly, the CFC is a limited public forum to which the above-noted limitations upon governmental regulations apply.

■ Moreover, plaintiffs do fall within the limits of that forum as it historically has existed. Executive Order 10927 made no differentiation among charitable organizations on the basis of how they accomplish their objectives. Exec.Order No. 10,927, 3 C.F.R. 454 (1959–63 Compilation). Certainly the CFC's provision precluding charitable organizations from any other access to government employees at their workplaces would prevent plaintiffs from undertaking such solicitation outside of the campaign. The limited public forum created by the CFC embraces plaintiffs and therefore any restriction upon their participation is subject to the constitutional requirements set forth above.

■ Plaintiffs argue, persuasively, that the restriction at issue here is a content-based prohibition that must survive close scrutiny in order to be upheld. There is no doubt that the exclusion's focus is the type of activity engaged in by certain organizations. Those organizations that exercise their right, *see NAACP v. Button,* 371 U.S. 415, 428–29, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963), to seek to change policy and obtain legal redress for wrongs through litigation and other means are to be barred from participation in the CFC under the new Executive Order. As the "expression" protected under the first amendment in an act of charitable solicitation is a request for contributions, the "content" of that expression is the accompanying statement of how those contributions will be used. It is this "content" that has, according to defendant, engendered such controversy among potential contributors as to warrant the exclusion based thereupon. *See, e.g.,* OPM Press Release, "President Orders Federal Drive to Focus on Charity for Truly Needy" (Feb. 10, 1983) at 2, Exh. A to McClure Affidavit [hereinafter cited as "OPM Press Release"] (quoting defendant, who noted a " '[s]entiment favoring a wholesale boycott of the CFC' ").

■ Nor does defendant's characterization of this exclusion as a "viewpoint-neutral" restriction change the fact that it is a content-based prohibition requiring close scrutiny. The Supreme Court rejected a similar argument in *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). The Court squarely ruled that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." 447 U.S. at 537, 100 S.Ct. at 2333. Consequently, it is of no moment that " 'the advocacy groups, both left and right ... will be excluded from the campaign.' " OPM Press Release at 2, Exh. A to McClure Affidavit (quoting defendant).

■ The next issue to consider is whether the new requirements for eligibility to participate in the CFC are "narrowly drawn to effectuate a compelling state interest." The enumerated purposes of Executive Order 12404 are: (1) "to lessen the burdens of

government and of local communities in meeting needs of human health and welfare," (2) "to provide a convenient channel through which Federal public servants may contribute to these efforts," (3) "to minimize or eliminate disruption of the Federal workplace and costs to Federal taxpayers that such fund-raising may entail," and (4) "to avoid the reality and appearance of the use of Federal resources in aid of fund-raising for political activity or advocacy of public policy, lobbying, or philanthropy of any kind that does not directly serve needs of human health and welfare." Exec.Order No. 12,404 § 1. Of these, only the fourth objective is directly related to the exclusionary provision at issue here.

In his March 24, 1983 statement to the Subcommittee on Manpower and Housing, defendant explained that the motivation for the restriction in question was the controversy allegedly being engendered by the presence of legal defense funds and "advocacy groups" in the CFC. Devine Statement to Subcommittee on Manpower and Housing at 5. According to defendant, "participation in the Campaign by these groups provoked increasing concern and even outright hostility." *Id.* Defendant stated that a "torrent" of complaints concerning the groups' participation in the CFC were made to OPM by the end of the 1982 campaign. *Id.* Employees, defendant asserted, "were outraged, and not without justification" that federal resources were being deployed in aid of such organizations. *Id.* at 6. He declared that "We were told [in the letters of complaint to OPM], in no uncertain terms, that unless the Campaign were reformed, employee boycotts—some concerted, others passive, but all of them devastating—would bring the life of the Campaign to an end." *Id.*

■ Not only is the assertedly "controversial" nature of plaintiffs' purposes not a compelling governmental interest, it is an *impermissible* basis for a restriction upon speech. "It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York,* 394 U.S. 576, 592, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572 (1969). There is no doubt that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Department of Chicago v. Mosley,* 408 U.S. at 96, 92 S.Ct. at 2290.

■ Defendant argues that the asserted interest in "avoid[ing] the . . . use of Federal resources in aid of fund-raising for" the various types of activities deemed not to constitute "direct services" is supported by the recent decision of the Supreme Court in *Regan v. Taxation With Representation of Washington,* —— U.S. ——, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983). In that case, the Court held that section 501(c)(3) of the Internal Revenue Code, which prohibits an organization from using tax-deductible contributions to support substantial lobbying activities, did not infringe any right or regulate any activity under the first amendment. *Id.,* 103 S.Ct. at 2001. To allow tax-deductible contributions to be used for lobbying purposes would be equivalent to a federal subsidy for that activity, the Court held, and "Congress is not required by the First Amendment to subsidize lobbying." *Id.* The instant case is distinguishable. It does not involve the question of a subsidy for plaintiffs' litigation and other advocacy activities—the issue raised by defendant here merely concerns the benefits which would inure to plaintiffs as well as all CFC participants as a result of the government's assumption of the task of operating the campaign. But the government did not accept the responsibility to conduct the CFC because of a desire to confer a benefit upon the various charitable organizations participating therein; rather, as explained above, it did so in order to regulate the many charitable appeals being made to federal employees at their workplaces. *See* Exec. Order No. 10,927 § 2(b) (authorizing predecessor of OPM Director to designate specific periods in which solicitations may be conducted and limit number of solicitations to three per year). The cost of operating the

CFC is the price for creating this exclusive channel by which charitable appeals may be made.

■ As the government's desire to avoid the *appearance* of using federal resources to support the legal defense funds' fund-raising efforts, total exclusion from the CFC certainly is not the least restrictive alternative that could have been imposed. While plaintiffs cannot be excluded from the CFC, the government may, if it desires, insert into campaign materials a *neutral* statement to the effect that its role in the CFC is simply to disseminate information and facilitate the making of donations. This would be sufficient to convey the government's desire not to endorse the making of contributions to any particular organization.

■ The only legitimate interest that the government can properly assert that pertains to the alleged opposition of employees to the participation of certain types of groups in the CFC is the protection of the employees' right not to contribute. *NAACP LDF II,* 560 F.Supp. at 676. But that problem only arises in the case of undesignated contributions. Therefore to the extent that the exclusion at issue could be considered to be directed at this interest, it is not as narrowly drawn as it might be in that it applies to designated contributions as well.

■ In light of the foregoing, the Court holds that, as far as it applies to the making of designated contributions, the directive in Executive Order seeking to reinstate a direct services requirement is contrary to plaintiffs' first amendment right to engage in charitable solicitation in a limited forum. Therefore, defendant shall be enjoined from denying pending or future application of plaintiffs to participate in the CFC for the solicitation of designated contributions.

## II. *Equal Protection Considerations*

■ As noted above, plaintiffs' exclusion from participation in the CFC with respect to undesignated contributions appears to be more appropriately subject to an equal protection analysis rather than first amendment review. The fact that first amendment activity is a primary part of each plaintiff's mission arguably situates the plaintiffs differently from those organizations in the CFC who do not engage in such activity, in view of the first amendment rights of employees who make undesignated contributions. *NAACP LDF II,* 560 F.Supp. at 676–77. Ensuring that the CFC is operated in such a way as to protect those rights is a legitimate governmental interest. However, as final regulations implementing Executive Order 12404 have yet to be promulgated it is premature to consider whether the means by which the government might carry out that interest are proper. Accordingly, as far as plaintiffs' action concerns their access to undesignated funds, this cause will be dismissed without prejudice.

## III. *Preliminary Relief*

Plaintiffs' request for preliminary injunctive relief is, of course, moot as it pertains to their ability to make their appeal for support through the CFC and receive designated contributions as a result. With respect to the question of plaintiffs' eligibility to receive undesignated contributions, a preliminary injunction is not warranted.

■ The standards governing the issuance of such relief are well-known and set forth in *Virginia Petroleum Jobbers Association v. FPC,* 259 F.2d 921, 925 (D.C.Cir. 1958). *See also Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). The factors which comprise those standards are (1) likelihood of success on the merits, (2) irreparability of harm, (3) detriment to third parties, and (4) where the public interest lies. During this litigation, the parties generally have focused their attention on the question of the plaintiffs' right to engage in charitable solicitation in the CFC rather than the issue of their eligibility to share in undesignated funds. As explained above, any right plaintiffs might have to access to undesignated contributions is much less than their right to solicit desig-

nated contributions through the CFC. On the question of access to undesignated funds, then, plaintiffs have not shown a strong likelihood of success on the merits. As to the second factor, inasmuch as undesignated funds are not distributed from their pool until after the annual campaign is concluded, it cannot be said that plaintiffs would be irreparably harmed should injunctive relief not issue at this time. Such relief could work to the detriment of other organizations eligible to receive undesignated funds for the reason that assuming defendant's characterization of the public outcry arising from plaintiffs' participation in the CFC is accurate, some employees may elect not to make the undesignated contributions they otherwise might make. Finally, it has not been shown why the public interest would require the issuance of this relief. Therefore, it is denied.

An Order consistent with this Memorandum Opinion shall be entered this date.

### ORDER

Consistent with the Memorandum Opinion entered in this action this date, it is, by the Court, this 15th day of July, 1983,

ORDERED, that plaintiffs' motion for summary judgment shall be and hereby is granted in part and denied in part, as explained in the Memorandum Opinion, and it is

FURTHER ORDERED, that defendant, his agents and subordinates, shall be and hereby are permanently enjoined from excluding plaintiffs from participation in the Combined Federal Campaign with respect to the solicitation of "designated contributions," as that term is used in this Memorandum Opinion, on the basis of the provisions of section (2)(b)(1 through 3) of Executive Order No. 12353, as amended by section 1(b) of Executive Order No. 12404 of February 10, 1983, and it is

FURTHER ORDERED, that to the extent that plaintiffs' complaint concerns their right to receive "undesignated contributions," as that term is used in the Memorandum Opinion, that claim is dismissed without prejudice, and it is

FURTHER ORDERED, that plaintiffs' request for preliminary injunctive relief shall be and hereby is denied.

This cause stands closed.