Court to similarly refuse to allow the constitutional claim.

In *Ellis v. United States Postal Service,* 784 F.2d 835 (7th Cir.1986), the Seventh Circuit considered the remedial procedures available to postal employees in light of *Bush v. Lucas.* There plaintiffs alleged that they were victims of political discrimination in violation of their due process rights. The court, after reviewing the Supreme Court's discussion in *Bush* concluded as follows:

> In the present case, the district court found that the "same general civil service remedies" found in *Bush* were also applicable to the appellants. *Ellis v. United States Postal Service,* No. 84 C 2160, Order at 7 (N.D.Ill. Mar. 6, 1985). The appellants were unable to demonstrate, in either the district court or this court, how the means for redressing grievances in the Postal Service are markedly less adequate or less comprehensive than the civil service remedies found in *Bush.* Since the Congress expressly authorized the adoption of final and binding grievance provisions in Postal Service collective bargaining agreements, 39 U.S.C. § 1206(b), and since the particular collective bargaining agreement between the Postal Service and the employees' union establishes a multi-step procedure which culminates in binding third-party arbitration, Appellees' App. at 5–9, we are unable to determine how this system is less adequate than the one in *Bush.* *See Winston v. United States Postal Service,* 585 F.2d 198 (7th Cir. 1978). Therefore, we affirm the district court's decision.

784 F.2d at 839–40. The Court agrees with the Seventh Circuit on this point. Because the remedial scheme available to plaintiff "adequately and comprehensively addresses the protection of constitutional rights in the employment context," *id.* at 840, the application of a separate constitutional claim is inappropriate under *Bush* and plaintiff's Count III must be dismissed.

## ORDER

In accordance with the memorandum filed this day and incorporated herein,

IT IS HEREBY ORDERED that defendant's motion to dismiss Counts I, II and III of plaintiff's second amended complaint be and is GRANTED and plaintiff's complaint be and is DISMISSED with prejudice.

IT IS FURTHER ORDERED that defendant's motion to dismiss the first amended complaint be and is DENIED as moot.

IT IS FURTHER ORDERED that costs shall be taxed against plaintiff.

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, et al., Plaintiffs,**

**v.**

**Constance HORNER, Director, Office of Personnel Management, Defendant.**

**PLANNED PARENTHOOD FEDERATION of AMERICA, INC., Plaintiff,**

**v.**

**Constance J. HORNER, Director, Office of Personnel Management, Defendant.**

Civ. A. Nos. 83–0928, 86–1367.

United States District Court, District of Columbia.

May 30, 1986.

Jack Greenberg, James M. Nabrit, III, Charles Stephen Ralston, Lowell Johnston, Jack John Olivero, Robert L. Becker, Puerto Rican Legal Defense and Educ. Fund, Inc., New York City, William L. Robinson, Norman Chachkin, Lawyers' Committee for Civil Rights Under Law, Stuart J. Land, Arnold & Porter, Robert R. Coulter, Walter B. Slocombe, Caplin & Drysdale, Elaine R.

Jones, Barry L. Goldstein, Brent Simmons, M. Carolyn Cox, A. Stephen Hut, Douglas B. Jordan, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiffs in No. 83–0928.

Walter B. Slocombe, Geoffrey Judd Vitt, Julia L. Porter, Caplin & Drysdale, Washington, D.C., for plaintiff in No. 86–1367.

John W. Bates, Asst. U.S. Atty., for defendant in Nos. 86–1367 and 83–0928.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

Plaintiffs NAACP Legal Defense and Educational Fund, Inc., Puerto Rican Legal Defense and Education Fund, Inc., Federally Employed Women Legal and Educational Fund, Inc., Indian Law Resource Center, Lawyers' Committee for Civil Rights Under Law, Sierra Club Legal Defense Fund, Inc., and Natural Resources Defense Council, Inc., seven legal defense funds that provide health and welfare services in the areas of civil rights and environmental protection through litigation and educational activities, have moved this Court for a preliminary injunction seeking to enjoin defendant Constance Horner, Director of the Office of Personnel Management ("OPM"), from excluding them from participating in the 1986 Combined Federal Campaign ("CFC"). Joining with them in this motion is Planned Parenthood Federation of America, ("PPFA"), plaintiff in a related action.[1] Oral argument on the motion was heard on May 28, 1986. For the reasons set forth below, the Court grants plaintiffs' motion.

### I.

Plaintiffs challenge eligibility requirements established by defendant that will

1. Plaintiff PPFA initially brought suit against then-OPM Director Donald J. Devine in 1983, but that suit was dismissed by stipulation of the parties in view of the ongoing proceedings in this case at that time. *Planned Parenthood of America, Inc. v. Devine,* No. 83–2118 (D.D.C. Sept. 27, 1983). PPFA did not participate in the appeals of this case and thus was not included in the remand directed by the Supreme Court.

Upon representations made by counsel at a May 16, 1986 status hearing, the Court invited PPFA to file a new action and directed that this action be consolidated with the present case for purposes of discovery and this preliminary injunction proceeding. PPFA filed suit on May 19, 1986. *Planned Parenthood of America, Inc. v. Horner,* No. 86–1367.

exclude them[2] from participating in the CFC, a charity drive aimed at federal employees. This Court previously held that the eligibility criteria set out in Executive Order 12,404 and OPM's implementing regulations were unconstitutional content-based restrictions on plaintiffs' First Amendment right to solicit charitable contributions. *NAACP Legal Defense Fund v. Devine*, 567 F.Supp. 401 (D.D.C.1983). That judgment, which was affirmed by a divided panel of the Court of Appeals, *see* 727 F.2d 1247 (D.C.Cir.1984), was subsequently overturned by the Supreme Court. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, — U.S. —, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ("*Cornelius v. NAACP*"). The Supreme Court held that the CFC was a nonpublic forum and that the government was therefore entitled to impose reasonable restrictions on the exercise of First Amendment rights within that forum. *Id.* 105 S.Ct. at 3451–53. The Court concluded that the "[g]overnment's posited justifications for denying respondents access to the CFC appear to be reasonable in light of the purpose of the CFC." *Id.* at 3454. In so ruling, however, the Court observed that an otherwise reasonable, viewpoint-neutral restriction may nonetheless be unconstitutional if it is in fact "a facade for viewpoint-based discrimination." *Id.* The Court noted that some evidence in the record suggested that such discrimination may lie behind the CFC eligibility requirements, but declined to decide the question on the record before it, inviting plaintiffs instead to pursue the issue on remand. *Id.* at 3454–55.

Shortly after the Supreme Court announced its decision, plaintiffs amended their complaint and requested discovery concerning defendant's underlying motive for adopting the eligibility criteria. The government responded with motions to dismiss the case and for a protective order. Those motions were denied by Order dated May 8, 1986. Three days prior to the deni-

al of defendant's motions, plaintiffs filed their motion for injunctive relief. They argue that final regulations published by defendant on April 4, 1986, 51 Fed.Reg. 11,668 (to be codified at 5 C.F.R. Part 950), in a form substantially identical to those at issue before the Supreme Court, will prevent them from participating in this year's CFC, thereby inflicting irreparable harm upon them before they are able to challenge, and this Court is able to determine, the validity of the eligibility requirements. An injunction is necessary to preserve the status quo, they contend, while this Court undertakes the searching inquiry into defendant's motive contemplated by the Court of Appeals' mandate in this case. *See NAACP Legal Defense and Educational Fund, Inc. v. Devine*, No. 85–00928 (D.C.Cir. Aug. 29, 1985). Defendant argues in opposition that plaintiffs have not, and cannot, carry their burden of demonstrating that they have a substantial likelihood of prevailing on the merits of their claim, or that the balance of hardships justifies the extraordinary relief they seek. Accordingly, defendants contend, plaintiffs' motion must be denied.

## II.

The standards governing the availability of preliminary injunctive relief are of course well established. Plaintiffs must demonstrate that: (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm absent an injunction; (3) defendant and others will not be irreparably harmed if an injunction issues; and (4) the public interest favors entry of an injunction. *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C.Cir.1958); *accord Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 673–74 (D.C.Cir.1985); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843–44 (D.C.Cir.

---

**2.** At the hearing held in this matter, the parties acknowledged that it is as yet uncertain whether the eligibility requirements will preclude PPFA from participating in the Campaign. There is no doubt, however, that the other plaintiffs in this action will be excluded if the regulations remain in effect.

1977). Where the balance of hardships tips decidedly in favor of the moving party, a showing that that party has raised a serious legal question—one so substantial as to be "fair ground for litigation and thus for a more deliberative investigation"—will suffice in lieu of a showing of substantial likelihood of success on the merits. *Holiday Tours*, 559 F.2d at 844.

### A.

Plaintiffs have identified two direct, immediate and irreparable harms if they are excluded from participating in the 1986 Campaign: first, they will irretrievably lose charitable contributions they would otherwise receive; second, they will suffer a violation of their constitutional rights.

Through past participation in the CFC, plaintiffs have garnered substantial donations and contributions from federal workers. Although no legal defense funds participated in the Campaign prior to the fall of 1981, in 1983 such groups received approximately $2 million from nationwide contributions. The NAACP Legal Defense and Educational Fund has received $1 million during its five years of participation. Ralston Affidavit III, ¶ 3. From 1982 through 1984, the Sierra Club Legal Defense Fund received some $800,000 in pledges, Blauner Affidavit, ¶ 5, and the Lawyers' Committee for Civil Rights Under Law collected more than $100,000. Robinson Affidavit, ¶ 12. Federal workers contributed $60,000 each year during the last three years to the Natural Resources Defense Council, Scherr Affidavit, ¶ 6, and CFC contributions now amount to more than 20 percent of the annual budget of the Indian Law Resource Center. Plaintiff PPFA received over $700,000 in each of the last two Campaign drives.

Clearly then, participation in the Campaign has been beneficial to plaintiffs. Exclusion will inflict substantial economic harm that cannot be rectified or remedied in the event plaintiffs ultimately prevail in their challenge. Given the great number of federal employees located in every state and abroad, it is obvious that plaintiffs cannot solicit contributions directly from this audience, as the cost of doing so would be prohibitively expensive. Nor could plaintiffs hope to recover from the government contributions that would have been made by federal workers. In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F.Supp. 1365, 1369 (D.D. C.1981), these same plaintiffs requested that they be assigned a disbursement from future CFC funds as compensation for revenues lost because of their unconstitutional exclusion from the 1981 Campaign. The Court there ruled that there was simply no way to calculate the amount of funds lost, and therefore denied their request.

Not only would plaintiffs' loss be irreparable because it would be incalculable, but the loss of CFC funds would force plaintiffs to curtail immediately the health and welfare services they provide to their clients. Plaintiffs would have to forego new litigation commitments and other activities, such as representation before administrative agencies or legislative bodies—opportunities that cannot be recovered if they eventually prevail on the merits. *See National Senior Citizen Law Center, Inc. v. Legal Services Corp.*, 581 F.Supp. 1362, 1372–73 (D.D.C.1984) (money damages cannot compensate plaintiffs for immediate withdrawal from ongoing litigation or inability to accept new litigation responsibilities); *Massachusetts Law Reform Institute v. Legal Services Corp.*, 581 F.Supp. 1179, 1187–88 (D.D.C.1984) (monetary relief inadequate compensation for foregone projects), *aff'd* 737 F.2d 1206 (D.C.Cir.1985). The harm will be visited not only on the plaintiffs themselves, but more importantly on their clients—persons unable to obtain legal assistance elsewhere. The Indian Law Resource Center would be compelled to cut its staff and discontinue many of its efforts on behalf of American Indians, Coulter Affidavit, ¶ 12; the Lawyers' Committee's ability to handle an ongoing desegregation case in Hattiesburg, Mississippi, would be jeopardized, Robinson Affidavit, ¶ 13; and the Sierra Club Legal Defense Fund would be forced to institute

a moratorium on new investigations of environmental problems. Sutherland Affidavit, ¶ 5.

Plaintiffs have more than demonstrated that their exclusion will produce a series of harms that "cannot adequately be redressed by final relief on the merits," and for which "money damages cannot provide adequate compensation." *New York Pathological & X–Ray Labs, Inc. v. INS,* 523 F.2d 79, 81 (2d Cir.1975); *see also Virginia Petroleum Jobbers Ass'n,* 259 F.2d at 925. In addition to these "economic" harms, plaintiffs argue that absent an injunction they will suffer an irreparable deprivation of their First Amendment rights as well. The Supreme Court has acknowledged that plaintiffs' solicitations of contributions through the CFC is a form of speech entitled to protection under the First Amendment. *Cornelius v. NAACP,* 105 S.Ct. at 3444–48. It is well established that the "loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 2686, 49 L.Ed.2d 547 (1976). Defendant attempts to dismiss this claim of a constitutional deprivation as "two descriptions of the same alleged 'harm.'" Defendant's Opposition at 14. But in recognizing that plaintiffs' solicitation constitutes a form of protected speech, the Supreme Court identified two distinct aspects of that speech: the "economic" portion, in which the solicitation of funds enables plaintiffs to continue to communicate their views and carry on their activities; and the purely communicative aspects, in which the solicitation of funds itself is a form of communication, exposing the federal workers to plaintiffs' views and indicating where they might obtain more information about the groups. *Cornelius v. NAACP,* 105 S.Ct. at 3448. This first component—the "economic" aspect—clearly overlaps with the economic harms enumerated by plaintiffs above. The second component, however, does not, and it is the loss of this ability to communicate views directly to federal workers through the CFC that constitutes an irreparable injury separate and apart from those identified above.

In sum then, plaintiffs have made out a very strong showing of irreparable injury if an injunction does not issue and they are excluded from participation in this year's Campaign.

### B.

Defendant contends that the harm to plaintiffs of exclusion is more than outweighed by the harms that would result if plaintiffs are again included in the CFC. Indeed, defendant argues that the Supreme Court has already struck the balance decidedly in the government's favor. The government has identified three principal harms that will flow from plaintiffs' participation in the Campaign. The first is the disruption of the workplace that could result from the inclusion of controversial organizations in the CFC. In its opinion, the Supreme Court reviewed the evidence in the record of such disruption—letters and telephone calls to OPM protesting the participation of certain "political" groups, the statements of some CFC workers indicating that extra effort was required to persuade disgruntled employees to contribute—and concluded that it supported the government's contention that plaintiffs' participation would be disruptive. *Id.* at 3453–54. This same evidence, the Court found, supported "an inference" that plaintiffs' participation would lead to a second harm: the inclusion of controversial groups could jeopardize the success of the CFC itself. *Id.* at 3453. Finally, the Court recognized that the third purported harm—the appearance or reality of political favoritism—was a valid justification for the regulations. *Id.*

■ Before assessing the severity of these injuries to defendant, the Court must address the government's vigorous contention that the Supreme Court has already determined that the balance of harms weighs in defendant's favor, and that this Court is not at liberty to re-examine the issue. Such a contention is, the Court believes, flatly incorrect. In its decision, the

Supreme Court judged the validity of the regulations under a reasonableness test. As a result, the Supreme Court did not balance the injury to plaintiffs of exclusion against the harms to defendant if plaintiffs were not excluded. Rather, it looked only to see whether the regulations were themselves reasonable. Thus, the Court found that the record supported "an inference" that plaintiffs' inclusion could be disruptive to the workplace or damaging to the CFC; that the President "could *reasonably* conclude" that a dollar spent directly on clothing was more beneficial than one spent on litigation, *id.* (emphasis supplied); and that exclusion of plaintiffs could *"reasonably* be considered a means of 'insuring peace' in the federal workplace." *Id.* (emphasis supplied). In that portion of the opinion addressing the reasonableness of the regulations, the Court nowhere even mentioned the harms to plaintiffs, let alone balanced them against the harms to defendant. Instead, it simply looked to see whether government officials could have reasonably believed that plaintiffs' participation could be detrimental to the government's legitimate interests and found, under this less stringent standard, that they could so believe.

The balance of harms analysis required in a motion for a preliminary injunction is entirely different. This Court is not called upon to decide simply whether defendant reasonably believes certain harms may result from plaintiffs' participation. Rather, the Court must balance the injury to plaintiffs if an injunction does not issue and plaintiffs ultimately prove the regulations are unconstitutional, against the harms to defendant if an injunction does issue and defendant ultimately prevails on the merits. The Supreme Court's rulings that the regulations are facially constitutional, and that defendant's purported justifications for those regulations are reasonable, are simply irrelevant to this inquiry.

■ Turning then to the harms defendant has identified, it is obvious that these injuries are not nearly as substantial as those that will befall plaintiffs if they are excluded from the CFC. Defendant has offered no evidence other than that presented to the Supreme Court indicating how plaintiffs' participation has or will disrupt the federal workplace. As noted above, the Supreme Court found that the defendant's evidence simply raised an *inference* of workplace disruption—that is, that government officials could *reasonably* believe that disruption would result from plaintiffs' participation based on the evidence before them. This hardly amounts to a showing that absent injunctive relief, defendant will suffer certain, great and imminent injury. *See Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d at 674. Indeed, following the Supreme Court's decision in this case, plaintiffs were again allowed to participate in the CFC, yet defendant has offered no evidence that their participation resulted in any untoward workplace disruption.[3] Similarly, the Supreme Court's conclusion that the government's desire to avoid both the appearance and reality of political favoritism does not amount to a finding of irreparable harm. Despite the legal defense fund plaintiffs' inclusion in the last five Campaigns, and PPFA's participation since 1968, defendant has come forward with nothing concrete indicating that plaintiffs' participation has in any way tainted the CFC. Indeed, the fact that plaintiffs participate only in the CFC's collection of designated funds—those expressly earmarked by the individual worker for a particular charity—mitigates the likelihood of solicitation abuses and favoritism. A concern for both the appearance and reality of favoritism is, as the Supreme Court found, reasonable. But again, such a concern, which so far as the present record indicates remains

---

**3.** The Court recognizes that defendant permitted plaintiffs to participate in the 1985 Campaign not because the government believed their participation would be non-disruptive, but because the Supreme Court decision came too late in the year to change CFC brochures and procedures. The fact remains, however, that defendant has not called the Court's attention to any evidence of workplace disruption growing out of plaintiffs' inclusion in the 1985 CFC.

a largely theoretical one, falls far short of the necessary showing of irreparable harm.

Finally, relying once again on the evidence presented to the Supreme Court, defendant claims that inclusion of controversial groups such as plaintiffs in the 1986 CFC will damage the Campaign. As just noted, this evidence merely raised an inference that such participation would harm the effectiveness of the Campaign. While the government's concern that such a harm would occur may be reasonable, it is clear that any such injury is neither imminent nor irreparable. As plaintiffs note, defendant's own statistics demonstrate that from 1979 to 1985, total CFC contributions increased more than 50 percent, from approximately $83 million to approximately $130 million, while the size of the average gift during this period rose from $30 to $50. In addition, the percentage of total contributions earmarked for designated funds increased from 45 percent in 1980 to more than 75 percent in 1984, indicating that a growing number of workers preferred to contribute to the charities of their choice. During this period, moreover, the percentage of federal workers making contributions to the Campaign remained relatively the same. This evidence strongly suggests not only that the CFC will not be irreparably harmed by plaintiffs' participation, but that the Campaign will not be harmed at all if they are again included.[4]

In short, defendant has not demonstrated that it will suffer grave, immediate or irreparable harm if plaintiffs are allowed to participate one more year in the Campaign while this Court determines whether plaintiffs' exclusion was based on impermissible discriminatory animus. On the contrary,

while defendant may reasonably anticipate these harms, they remain largely speculative, and defendant has failed to demonstrate that they cannot be remedied in the event the government prevails on the merits of the case.

### C.

The public interest also favors issuance of an injunction. Defendant argues that the public's interest in a smoothly operating federal workplace would be undermined by plaintiffs' participation in the CFC, but as just discussed, plaintiffs' inclusion in the Campaign has had at most a minimally disruptive effect to date. By contrast, denial of an injunction would have a direct and immediate impact on plaintiffs' clients, forcing cutbacks in services and jeopardizing ongoing representations. Many of these clients are disadvantaged and would be unable to obtain the services offered by plaintiffs elsewhere. In addition, those thousands upon thousands of workers who in the past have contributed to plaintiffs through the CFC will be denied the opportunity to do so unless defendant is enjoined from implementing the regulations. Those workers, on the other hand, who do not wish to contribute to plaintiffs will not be affected by an injunction; they will remain free to choose not to donate money to plaintiffs and, because plaintiffs only participate in designated funds, workers need not fear that any undesignated contributions they make to the Campaign will be disbursed to organizations such as plaintiffs.

### D.

In light of the Court's determination that the balance of harms and the public inter-

---

4. Defendant argues that this Court may not rely on the evidence just recited because these same statistics were presented by plaintiffs to the Supreme Court and were rejected by that Court. This argument fails once again to recognize the fundamental difference between the Supreme Court's inquiry and that which this Court must undertake here. The Supreme Court "rejected" plaintiffs' statistical evidence only to the extent that it ruled that, notwithstanding this evidence, defendant *could reasonably believe* that the CFC would be harmed by plaintiffs' participation.

At this juncture, this Court is not concerned, however, with whether defendant's belief was reasonable. Instead, it must assess the likelihood and severity of the harm to the CFC. The evidence plaintiffs present is highly relevant to that determination. The Supreme Court's decision in no way impugns the validity or relevance of this evidence, nor does it preclude this Court from relying on it for the purpose of determining the propriety of a preliminary injunction.

est strongly favor issuance of an injunction, plaintiffs must simply show that they have raised a serious legal question worthy of further deliberative investigation. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours,* 559 F.2d at 844. Indeed, this less stringent standard is particularly appropriate here, where the inquiry into defendant's motive is at an early stage, and defendant has strenuously resisted plaintiffs' discovery efforts. *See id.* (less stringent inquiry into movant's probability of success especially appropriate at early stage of litigation). Given defendant's objection, prior to this Court's Order of May 8, 1986, to provide plaintiffs with any requested discovery, it would be both unrealistic and unfair to expect plaintiffs to demonstrate a substantial likelihood of success on the merits of their claims at this time.

There can be no doubt, however, that plaintiffs can and have presented serious legal questions concerning defendant's underlying motive for excluding them from the CFC. The Supreme Court's remand of this action is largely dispositive of this issue. The Court recognized that even though the issue had not been briefed or argued below, the evidentiary record before it raised a substantial issue regarding the sincerity of defendant's purported justifications for the exclusion. While finding that the defendant's *"posited* justifications" for plaintiffs' exclusion *"appear* to be reasonable," *Cornelius v. NAACP,* 105 S.Ct. at 3454 (emphasis supplied), the Court went on to note that "reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination." *Id.* The Court observed that despite the government's ostensible purpose of limiting participation in the CFC to groups that provide direct health and welfare services, "[o]rganizations that do not provide [such] services, such as the World Wildlife Fund, the Wilderness Society, and the United States Olympic Committee, have been permitted to participate in the CFC," *id.* at 3455, and it expressly stated that defendant's "purported concern to avoid

controversy excited by particular groups may conceal a bias against the viewpoint advanced by the speakers." *Id.* In remanding the case to this Court, the Court of Appeals took the rather unusual step of highlighting these portions of the Supreme Court's opinion in the mandate. *See NAACP v. Devine,* No. 85–00928 (D.C.Cir. Aug. 19, 1985).

In addition, plaintiffs argue that the open hostility of their groups to many of the current administration's civil rights and environmental policies, and their efforts to challenge those policies through litigation, raise a strong inference that the government's decision to exclude groups that seek to advance their views through litigation was discriminatory and designed to punish advocates of "liberal" positions. This inference is buttressed by the fact that Donald Devine, former OPM Director, identified a number of the plaintiffs by name in the memorandum that formed the basis of the Executive Order challenged here. Ralston Affidavit, Exh. K. In addition, Mr. Devine made no secret of his distaste for plaintiff PPFA, stating at a CFC eligibility hearing that he found its activities "detestable." *See NAACP v. Devine,* 727 F.2d 1247, 1262 (D.C.Cir.1984), *rev'd* — U.S. ——, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). In addition, plaintiffs have directed the Court's attention to a recent newspaper article suggesting bias against plaintiffs on the part of an unnamed administration official. *See* Ralston Affidavit II, Exh. X. While such an article does not constitute evidence of discriminatory animus, plaintiffs have offered enough circumstantial and inferential evidence of such animus to raise serious questions concerning the sincerity of defendant's reasons for excluding plaintiffs from the CFC.

It is well established that the government "may not grant use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). Plaintiffs contend, and they have

offered at least circumstantial and inferential evidence to support their contention, that defendant has violated this principle. At the express invitation of the Supreme Court, they seek a determination as to whether defendant intentionally excluded them from the CFC because of their views, which frequently clash with those of the present administration. They have clearly raised substantial legal questions worthy of further deliberative investigation.

### III.

In conclusion, the Court finds that plaintiffs have carried their burden of establishing that a preliminary injunction is warranted. They have demonstrated that they and their clients will suffer grave and irreparable harm if excluded from this year's CFC, while defendant will suffer little if any injury if plaintiffs are included in the Campaign again. This balance of harms, coupled with the serious constitutional questions raised by their complaint, entitle them to the extraordinary relief they seek.

A separate Order accompanies this Opinion.

### ORDER

For the reasons set forth in the Memorandum Opinion of this same date, it is this 30th day of May, 1986,

ORDERED that plaintiffs' motion for a preliminary injunction is granted, and it is

FURTHER ORDERED that defendant Constance J. Horner, Director, Office of Personnel Management, and her agents, including the local Federal Coordinating Committees, be and they hereby are enjoined from excluding plaintiffs NAACP Legal Defense and Educational Fund, Inc., Puerto Rican Legal Defense and Education Fund, Inc., Federally Employed Women Legal and Educational Fund, Inc., Indian Law Resource Center, Lawyers' Committee for Civil Rights Under Law, Sierra Club Legal Defense Fund, Inc., and Natural Resources Defense Council, Inc. and Planned Parenthood Federation of America, Inc., from par-

ticipation in the Combined Federal Campaign on the basis of section (2)(b)(1)–(3) of Executive Order No. 12,353, as amended by section 1(b) of Executive Order No. 12,404, or sections 950.30(b)(1)(i), (iv)–(v), and 950.-303(b)(2)–(3) of the regulations implementing those Orders, 51 Fed.Reg. 11,668 (April 4, 1986) (to be codified at 5 C.F.R. Part 950), pending a determination by this Court,[1] pursuant to the remand of the United States Supreme Court and the Court of Appeals for this Circuit, whether such provisions are the product of unconstitutional discrimination.

Defendant, Constance Horner, shall promptly provide notice of this Order to all Federal Coordinating Committees by such means as will assure receipt of such notice no later than 9:00 a.m. on June 2, 1986, in the relevant time zone; and it is

FURTHER ORDERED that the eight plaintiffs shall post with the Clerk of the Court a bond totalling $1,000 in cash or surety, no later than 12:00 noon, June 4, 1986, failing which this preliminary injunction shall stand immediately dissolved; and it is

FURTHER ORDERED that, in consideration of the pressing deadlines governing applications for inclusion in the Combined Federal Campaign and other matters pertaining to the administration of the Campaign which have necessitated this Court's prompt resolution of plaintiffs' motion for a preliminary injunction, there shall be no stay of this Order in the event defendant notes an appeal.

SO ORDERED.

---

1. A hearing expected to last four days is scheduled for September 24, 1986.